203 P.2d 604

**LOWTHER v. METZKER et ux.**

**No. 7455.**

Supreme Court of Idaho.

March 1, 1949.

Rehearing Denied March 21, 1949.

116

Cleve Groome, of Caldwell, and Frank
F. Kibler, of Nampa, for appellants.

Logan D. Hyslop, of Nampa, for respondent.

GIVENS, Justice.

To secure one installment payment on a contract for the purchase by respondent from appellants of real and personal property, respondent, on November 13, 1943, gave appellants a note and as security therefor a chattel mortgage covering an equal one-half share of the crops growing, grown, to be sown and grown, during the year 1944 on the real estate contracted to be sold.

The note and chattel mortgage not being paid on the due date, November 5, 1944, appellant Metzker on July 31, 1945, swore to a criminal complaint in Justice's Court, Caldwell Precinct, Canyon County, charging respondent with having, wrongfully, wilfully and feloniously, disposed of appellants' one-half of the crops grown during 1944 and covered by the chattel mortgage, without appellants' consent, alleging the value thereof to be over $60.00.

Respondent was arrested; a preliminary hearing held and after consultation between the Justice and Deputy Prosecuting Attorney of Canyon County, respondent was discharged and said criminal complaint dismissed August 9, 1945.

The same day appellants signed a similar criminal complaint, but not alleging any value of the crops. This case was tried in Justice's Court and respondent acquitted.

Thereafter, the present action for malicious prosecution was instituted by respondent; the amended complaint alleged the above arrests and respondent's asserted damage thereby, and set forth two causes of action: the first based upon the arrest under the first criminal complaint, asking therefor $3,000 and the second upon the second arrest, asking therefor $2,000.

Appellants' motion for non suit as to appellant Effie Metzker was granted and she was thereby eliminated from further proceedings herein.

Section 17-3907 I.C.A. provides that:

"Every mortgagor of property mortgaged in pursuance of the provisions of chapter —— of title ——, (Chap. 10 of Title 44, I.C.A., correlative Section 44-1017 I.C. A.) Idaho Code who, while such mortgage remains unsatisfied in whole or in part, wilfully removes from the county or counties where such mortgage is recorded, or destroys, conceals, sells or in any manner disposes of the property mortgaged, or any part thereof, without the consent of the holder of the mortgage, is guilty of larceny."

"Under the provisions of that section a person may be convicted of either petit or grand larceny. If the property disposed of is livestock, or exceeds the value of $60, the disposition of the same by the mortgagor, under the provisions of said sec. 7100, is grand larceny; otherwise it is petit larceny. Section 7048, Rev.St. 1887.

"It is suggested by counsel that, as the evidence shows the mortgagee had received other security from the mortgagor in place of the property sold, this prosecution cannot be maintained for that reason. Counsel mistakes the purpose of said statute. The provisions of that statute are not solely for the protection of the mortgagee, but for the protection of the person to whom the mortgaged property has been sold as well, as the mortgagee may take the property wherever found, and the purchaser may be the loser. In the case at bar the mortgagee may not in the end lose a dollar, but it appears from the record that the purchaser has lost money by reason of the purchase, and the law is for his protection, as well as that of the mortgagee. The question whether any one has lost money by reason of the sale of mortgaged property is not the test as to whether a crime has been committed under the provisions of said section, and if a crime has been committed thereunder, it is not in the power of the mortgagee to condone the offense, and prevent a prosecution for it, any more than one can commit the larceny of a horse and, if caught, pay for the horse, and thus satisfy the law for the commission of the crime." State v. Barber, 15 Idaho 96, at page 98, 96 P. 116, 117.

In a malicious prosecution (civil), "* * * plaintiff must allege and prove (1) that there was a prosecution; (2) that it terminated in favor of plaintiff; (3) that the defendants were prosecutors; (4) that they were actuated by malice; (5) that there was want of probable cause; and (6) the amount of damages that plaintiff

has sustained." Clark v. Alloway, 67 Idaho 32, 170 P.2d 425, at page 427.

■ Since want of probable cause involves a negative, slight proof is all the law requires to make a prima facie case. Douglas v. Kenney, 40 Idaho 421, at page 423, 233 P. 874; Fowler v. Ruebelmann, 65 Idaho 231, at page 236, 142 P.2d 594.

■ The majority rule is that an acquittal on trial of the merits is not prima facie evidence of lack of probable cause. 54 C.J.S., Malicious Prosecution, § 36, page 998; 34 Am.Jur. 740, § 58; Groda v. American Stores Co., 315 Pa. 484, 173 A. 419, 94 A.L.R. 738, 744.

Herein the only evidence in respondent's case in chief of lack of probable cause was with regard to the first cause of action, dismissal by the magistrate on motion of the prosecuting attorney and as to the second cause of action, acquittal by the jury.

Under the above rule, therefore, appellant's motion for non suit should have been granted as to the second cause of action.

■ However, as to the first cause of action, it would appear this court has indicated a dismissal upon preliminary examination constitutes sufficient evidence of lack of probable cause to make a prima facie case. Nettleton v. Cook, 30 Idaho 82, 163 P. 300, L.R.A.1917D, 1194; Douglas v. Kenney, supra. This likewise seems to be the general rule. 94 A.L.R. 747; 34 Am.Jur. 742, § 62, and 744, § 65.

Therefore, the motion for non suit as to the first cause of action was properly denied.

■ However, regardless of the termination of the criminal proceedings in favor of respondent, if it affirmatively appears he was in fact guilty of a criminal offense, he may not maintain an action of malicious prosecution in connection therewith. Nettleton v. Cook, supra; Fowler v. Ruebelmann, supra.

■ Likewise, if appellant made a full, fair and complete disclosure to an attorney and thereupon was advised by the attorney to institute the criminal prosecution, even though the attorney was mistaken as to the rectitude of such procedure, the action for malicious prosecution fails. Such disclosures, however, must be full and complete, and—

"* * * The mere statement of a prosecutor, in giving evidence in his defense, that he made a full and fair disclosure of all the facts to his counsel, is not conclusive." Douglas v. Kenney, supra [40 Idaho 421, 233 P. 878].

■ That the respondent was in fact guilty of the offense and/or appellant made a full and complete disclosure, are in the nature of affirmative defenses and the burden of proving the same was upon appellant. Douglas v. Kenney, supra.

Appellant did not specifically plead he had not consented to the disposition of the

mortgaged chattels, nor did respondent testify appellant had consented.

Appellant's testimony with regard to consent or lack of consent, and what he told the attorney prior to the filing of the criminal complaint was that he received nothing in payment of the chattel mortgage; that he was not out to the ranch during 1944; that in April 1945 he was there and there was no hay, and as to disclosures:

"Q. Did you make a full and fair disclosure to Mr. Axelsen of all matters pertaining to this action. A. Yes, sir.

"Q. Then you had not received any money, told him. A. Yes, sir.

"Q. What did Mr. Axelsen do, if anything. A. Advised me to get out a complaint, or have a complaint made out and swear out a warrant for this man."

On cross examination:

"Q. You answered the question generally, did you, you made a full statement. Now the plaintiff in this case would like to know what you did state to the prosecuting attorney regarding this matter. A. I went and told him that I had this mortgage, a note to secure the mortgage for half of the crop for 1944."

Again:

"Q. (By Mr. Hyslop) Your two criminal actions were really based on what you allege to be a fact, that Jack Lowther had fed certain hay that you claimed. A. Yes.

"Q. And that he fraudulently disposed of that hay. A. Yes."

The last answer was, on appellant's motion, stricken. Even if we concede that the answer "Yes" to this question, "And that he fraudulently disposed of that hay," could have been considered by the jury as meaning he had not consented to the sale of the hay, it was not before the jury.

"Q. How did you then know that the value of half of that hay was over the value of $60.00, as you allege in your criminal complaint. A. I don't know. There wasn't enough there to cover it.

"Q. You had no idea how much was there, still you swore to this complaint and had a warrant issued on it that he had disposed of property over the value of $60.00. A. He disposed of my part of the crop."

Undoubtedly and by his own admission, respondent had disposed of appellant's share of the crop, but the paramount question then was, whether with or without consent. The matter of complete disclosure and consent is certainly not clear or free from doubt, but peculiarly presented a question for the jury and the burden of proof was upon appellant to prove he had not consented and had made a complete disclosure. Douglas v. Kenney, supra. The state of the record is such as to impress us that it was a question for the jury and we cannot dispose of it as a matter of law.

Appellant assigns as error the refusal to give certain instructions. His requested

Instruction No. 3 was fully covered by Instruction No. 16. Requested Instructions Nos. 4, 15 and 21 were covered by Instruction No. 13.[1]

Instruction No. 13 is assigned as error because of the word "competent" as defining counsel. Appellant's requested Instruction No. 12, the refusal of which he assigns as error, and which while not given in the language requested, was given in substance in No. 13, contained this statement:

"As a matter of fact when a party communicates to counsel in *good standing* all of the facts bearing upon the guilt of the accused, of which he has knowledge or could have ascertained by reasonable diligence, and in good faith acts upon his advise in the prosecution of the accused, he can not be held responsible for malicious prosecution, so that if in this action you find that before the institution of the prosecution complained of, the defendants consulted *reputable* counsel and stated fully all of the facts  *  *  *." (Emphasis ours.)

and again, the same language was repeated in requested Instruction No. 20, which was not given, by using the words "counsel in good standing", and "reputable counsel." Appellant argues that the question of "competent" would lead into a collateral question and raise issues not pertinent. The same can be said of "good standing" and "reputable" and he, himself, invited the use of those terms. Appellant has not indicated what difference there might be between a "competent" counsel and a "reputable" counsel or counsel in "good standing" and since appellant requested instructions in language not dissimilar to that used in given Instruction No. 13, he cannot now be heard to complain. In other words, appellant has not shown that the determination of "reputable" counsel or counsel in "good standing" would not have provoked as much collateral query as "competent" counsel.

Requested Instruction No. 13 was covered fully by Instruction No. 7.

Appellant's assignments of error that the demurrer to and motions to strike the amended complaint and for non suit should have been sustained, are without merit.

Plaintiff's Exhibit C, the admission of which is assigned as error, was a copy

---

1 "You are further instructed that if you believe from the evidence that the defendant, before instituting the prosecution against the plaintiff complained of in this action, sought the advice of competent counsel and that he truly, correctly, fully and fairly and in good faith stated all of the facts within his knowledge, or of the facts which he by reasonable effort could have known with reference to the guilt of the plaintiff of the charge to be made against the plaintiff, and that said counsel thereupon advised the defendant that he had probable cause to swear out the complaint against the plaintiff, and that the defendant acted upon said advice in good faith, then I instruct you as a matter of law this would be a complete defense to the plaintiff's cause of action against the defendant." Instruction No. 13.

of the contract for the sale of real estate, upon which the crops were grown. The particular copy introduced evidently was not an original, but a copy taken from the records in a suit involving the contract and the objection made was this:

"We make the same objection as not the best evidence, and include all the previous objections."

The only previous objection which appears to be pertinent was this in connection with this question:

"Q. Do you know how it (evidently Ex. C) got into the record in the Supreme Court. A. It was introduced as—

"Mr. Kibler: We object to that as incompetent.

"The Court: Objection sustained."

Whether the objection was interposed to what the witness was about to say, or whether it was about the record or how the exhibit got in the record, it is impossible to say. It being apparent that Exhibit C as introduced was a copy of the original contract, overruling the objection that it was not the best evidence, is not shown to be prejudicial.

Judgment is, therefore, affirmed as to the first cause of action, and reversed as to the second. Costs awarded to respondent.

HOLDEN, C. J., PORTER, J., and GLENNON and BAKER, District Judges, concur.