580 P.2d 862

Gary A. ROWLES, Plaintiff-Appellant,

v.

COUNTRY KITCHEN INTERNATIONAL, INC., a Minnesota Corporation, David Wayne Cormican, Rodney L. Bergeron, John Doe I through John Doe II, Inclusive, John Doe Corporation I through John Doe Corporation II, Inclusive, Defendants-Respondents.

No. 12549.

Supreme Court of Idaho.

June 27, 1978.

Kenneth B. Howard, Jr., Boise, Terrance W. Hannon of Hannon & Gabourie, Coeur d'Alene, for plaintiff-appellant.

Scott W. Reed, Coeur d'Alene, for defendants-respondents.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment in favor of defendants-respondents in an action for malicious prosecution brought by plaintiff-appellant Gary A. Rowles against defendants-respondents Country Kitchen International, Inc., David Cormican and Rodney L. Bergeron.

Rowles appeals on the sole basis that there exist unresolved and controverted issues of material fact which made erroneous the issuance of summary judgment. We disagree and affirm.

The established facts indicate that Rowles and his brother went to the Country Kitchen establishment in Coeur d'Alene, Idaho, at approximately 12:00 midnight, June 28, 1975. They had ordered and been served coffee and were preparing to order food when Cormican and Bergeron, employees of Country Kitchen, approached them and demanded to know what they were smoking. A conversation ensued regarding what the Rowles brothers were smoking at which the Rowleses evidently took offense and left without either drinking or paying for their coffee. In the parking lot Cormican and Bergeron attempted to prevent the Rowleses from leaving. Gary Rowles drove his vehicle out of the parking lot with Cormican lying on his stomach on the hood of the vehicle. Rowles proceeded onto a four-lane highway and was driving at 20–25 miles per hour when Cormican jumped off, sustaining injuries for which he was later hospitalized. Bergeron was also allegedly injured.

Cormican and Bergeron contacted the police department and a police investigation ensued during which Rowles was interviewed to "get his side of the story." The injuries to Cormican and Bergeron were substantiated. Cormican and Bergeron were interviewed at the office of the prosecuting attorney, following which a standard criminal complaint was prepared by that office charging Rowles with assault with a deadly weapon. Rowles was arrested, held in custody briefly and released on bond. A preliminary hearing was held at which witnesses for both the prosecution and defendant testified. The magistrate judge found "probable cause to believe that the offense alleged was committed and the defendant is guilty thereof." Subsequently, the office of the prosecuting attorney filed an information charging assault with a deadly weapon. Approximately two months later, the office of the prosecuting attorney moved to dismiss the criminal action "upon the grounds that the State cannot meet their burden of proof at time of trial."

All of the above facts are essentially uncontroverted. However, appellant Rowles argues that his bare allegation that Cormican and Bergeron misstated the facts to the office of the prosecuting attorney creates an issue of material fact to be resolved at trial. In support of defendants-respondents' motion for a summary judgment an affidavit was obtained from the prosecuting attorney indicating that Cormican and Bergeron had made a full and fair disclosure of the facts to him. That affidavit was uncontradicted at the time of summary judgment. Rowles further asserts that the alleged misstatement is an unresolved issue of material fact, i. e., how Cormican came to be on the hood of the car—was he thrown on the hood after being struck by the car or did he voluntarily jump on the hood in an attempt to prevent Rowles from driving away?

The requisites for a successful proof of malicious prosecution are defined in *Howard v. Felton*, 85 Idaho 286, 379 P.2d 414 (1963). As to the requirement of termination of the criminal prosecution in favor of

the accused, see Restatement (Second) of Torts § 653(b) (1977). As to abandonment of criminal proceedings by a public prosecutor not constituting necessary proof of lack of probable cause, see Restatement (Second) of Torts § 665(2) (1977). *See also Clark v. Alloway*, 67 Idaho 32, 170 P.2d 425 (1946); *Fowler v. Ruebelmann*, 65 Idaho 231, 142 P.2d 594 (1943); Annot., 59 A.L.R.2d 1413 (1958); Annot., 5 A.L.R. 1688 (1920).

▆ We rest our decision in this cause on the asserted defense of defendants-respondents, *i. e.,* advice of counsel. Here, respondents Cormican and Bergeron reported the affair to the police. An investigation was made by the police, and there is no assertion that such investigation was not objective or fair. Cormican and Bergeron were interviewed by the office of the prosecuting attorney, which thereafter prepared a formal criminal complaint and either advised or requested that it be signed. At that time the judgment of Cormican and Bergeron was superseded by that of the prosecutor. *See generally* Annot., 28 A.L.R.2d 646 (1953). To assert the defense of advice of counsel in a malicious prosecution action there must be full and fair disclosure. *Howard v. Felton*, 85 Idaho at 291, 379 P.2d 414; *Allen v. Moyle*, 84 Idaho 18, 367 P.2d 579 (1961); *Thomas v. Hinton*, 76 Idaho 337, 281 P.2d 1050 (1955); *Lowther v. Metzker*, 69 Idaho 115, 203 P.2d 604 (1949); *Donaldson v. Miller*, 58 Idaho 295, 72 P.2d 853 (1937); *Douglas v. Kenney*, 40 Idaho 412, 233 P. 874 (1925); Annot., 10 A.L.R.2d 1215 (1950). For a recent statement of this rule, see *Dawson v. Mead*, 98 Idaho 1, 557 P.2d 595 (1976). In the instant case the uncontroverted affidavit of the deputy prosecuting attorney sets forth that prior to the preparation of the criminal complaint an investigation was made by the office of the prosecuting attorney with assistance of three police officers; that prior to the filing of the complaint, Cormican and Bergeron were interviewed by the office of the prosecuting attorney and were again interviewed prior to the preliminary hearing; and that "the criminal complaint instituting the prosecution was prepared and filed upon the advice of our office." The affidavit

further sets forth that to his knowledge Cormican and Bergeron gave a full and fair statement of the facts and that the prosecuting attorney's office was not contacted by anyone from Country Kitchen International, Inc., other than Cormican and Bergeron.

As to defendants-respondents Cormican and Bergeron, the uncontroverted facts indicate that they made full and fair disclosure to the office of the prosecuting attorney and acted upon the advice of that office. Such constitutes a defense under the above cited decisions of this Court. Summary judgment therefor was properly issued in favor of Cormican and Bergeron.

▆ As to the corporate defendant, Country Kitchen International, Inc., there is a total absence of evidence tending in any way to connect that corporation with the prosecution of Rowles. One call was allegedly received by the office of the chief of police from some person allegedly associated with the corporate defendant, but whoever it might be and what position, if any, he held with the corporation is totally unknown. Summary judgment was properly issued in favor of the corporate defendant Country Kitchen International, Inc.

The summary judgment issued by the trial court is affirmed. Costs to respondents.

McFADDEN, DONALDSON and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

I

As the Court's opinion notes, advice of counsel is in this state a complete defense to an action for malicious prosecution, provided, however, that advice of counsel is given only after a full and fair disclosure of all the facts. How, then, is that issue to be decided? Should it be upon a trial by a jury, or should it be decided, as here, by the prosecuting attorney who, without reciting in the least any facts stated to him, and without explaining by what means he could

compare disclosed facts to actual facts, executes the wholly conclusory statement that, "*To the best of my knowledge* Mr. Cormican and Mr. Bergeron each gave a full and fair statement of the facts known to them prior to the filing of the criminal complaint"? The underlined portion suggests to my mind that the prosecutor (who did not prepare the affidavit which he signed) was being more equivocal than one would expect. Prior to that statement is this two sentence paragraph:

> Prior to the filing of the complaint, Dave W. Cormican and Rodney L. Bergeron were interviewed in the office of the Prosecuting Attorney. I personally interviewed Mr. Cormican and Mr. Bergeron prior to the preliminary hearing held on the criminal complaint on November 19, 1975.

It is highly significant that while he states that he *personally* interviewed Cormican and Bergeron before they testified at the preliminary hearing, in the preceding sentence he only goes so far as to say that Cormican and Bergeron were interviewed in[1] the prosecutor's office.[2] Perhaps it is mere inadvertence in sentence structuring, but I can not read from this affidavit that Cormican and Bergeron made fair and full disclosure of all the facts to the prosecutor or that he even talked with them prior to the filing of the criminal complaint. Couple that together with the affidavit's being entirely conclusory in nature, and it becomes impossible to say as a matter of law that advice of counsel was given following a requisite fair and full disclosure. Even if Cormican and Bergeron had made affidavits of the supposed facts, *which they did not*, there would still remain the necessity of a trial. Therein a proper factfinder could determine the actual facts; determine what, if anything, was related *to the prose-*

*cuting attorney*; and then determine whether a fair and full (not a misleading or partial) disclosure was in fact made.

## II

There is not, contrary to the Court's opinion, "a total absence of evidence tending in any way to connect that corporation with the prosecution of Rowles." The one call received (not "allegedly" as the opinion infers, but according to an affidavit) sworn to by the Chief of Police is something more than a total absence. Chief Nuttleman stated:

> During midsummer of 1975, I received a telephone call from a person in Moorhead, Minnesota who identified himself as an official of Country Kitchen International, Inc., a Minnesota corporation. He requested information concerning the progress being made with respect to a criminal prosecution wherein two employees of the Country Kitchen, Coeur d'Alene, were the complaining witnesses.
>
> This person expressed concern to me about the case and an interest in seeing the defendant prosecuted.

Whether this evidence inculpates the corporation is concededly a close question. A jury could very likely find that, where a corporation officer called from halfway across the United States to see how a rather inconsequential criminal prosecution was progressing, and identified it as one where the corporation's employees were complaining witnesses, the corporation had encouraged the initiation of the prosecution. Any doubt should, at this stage, be resolved against the moving party, keeping in mind that all inferences are to be in favor of the non-moving party. This determination is to be based on the "pleadings, depositions, and admissions on file, together with the affidavits, if any . . . ." I.R.C.P. 56(c).

---

1. I see a great distinction between an affidavit saying that the interview was *in* the office of the prosecuting attorney, as against the statement of the opinion that the interview was *by* the office of the prosecuting attorney.

2. Defendants in their brief to the trial court certainly left the trial court with the impression that the prosecutor had personally been presented with a fair and full disclosure:

> The deputy prosecuting attorney in his affidavit sets forth that the complaint was prepared in his office. He personally interviewed defendants, CORMICAN and BERGERON. He believes they made a full and fair disclosure.

However, courts should liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences from the evidence. *Farmer's Insurance Company of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976).

The Court today is clearly weighing the credence and effect of Chief Nuttleman's sworn statement, even though there are *no* contradictory affidavits from Country Kitchen, the supplying of which would not be at all any difficult task. At a trial the parties could with further discovery ascertain and present evidence from which the trier of facts could determine the extent of Country Kitchen's involvement.

I dissent from the Court's disposition of this cause.